



2017 DEC 15   U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Ayn B. Ducao*
*Assistant United States Attorney*
*Ayn.Ducao@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4819
MAIN: 410-209-4800
FAX: 410-962-3091

September 6, 2017

Christian Bryan Lassiter, Esquire
Assistant Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:   United States v.  Tomasa Vegas
      Criminal No. MJG-17-0086

Dear Mr. Lassiter:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by September 16, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to waive indictment and plead guilty to a two-count Information that will charge her with Two Counts of Use of Interstate Facilities to Promote a Business Enterprise involving Prostitution Offenses (sex trafficking of a minor), in violation of 18 U.S.C. §1952(a)(3). The Defendant admits that she is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.      The elements of each of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

1

## COUNT ONE

From in or about March 2016, continuing through on or about November 2016, in the District of Maryland,

      a.     The Defendant used a facility in interstate commerce;

      b.     The use of the facility in interstate commerce was done with the intent to promote, manage, establish or carry on an unlawful activity, that is, a business enterprise involving prostitution offenses (sex trafficking of a minor) in violation of 18 U.S.C. §1591(a); and

      c.     The Defendant thereafter performed or attempted to perform an act in furtherance of the unlawful activity.

## COUNT TWO

Beginning in at least February 2016 and continuing through in or about November 2016, in the District of Maryland,

      d.     The Defendant used a facility in interstate commerce;

      e.     The use of the facility in interstate commerce was done with the intent to promote, manage, establish or carry on an unlawful activity, that is, a business enterprise involving prostitution offenses (sex trafficking of a minor) in violation of 18 U.S.C. §1591(a); and

      f.     The Defendant thereafter performed or attempted to perform an act in furtherance of the unlawful activity.

## Penalties

3.     The maximum sentence provided by statute for the offenses in Counts One and Two to which the Defendant is pleading guilty is as follows: five years imprisonment, a $250,000 fine and three years of supervised release. In addition, the Defendant must pay $100 per count for a total of $200 as a special assessment pursuant to 18 U.S.C. § 3013. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

d.      The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

e.      If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

f.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

g.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

h.      The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

i.      If the Defendant were found guilty after a trial, she would have the right to

3

appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

j.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the statement of the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

k.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

l.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following guidelines (except where noted):

## COUNT ONE

**a.      Use of Interstate Facilities in Aid of Business Enterprise Involving Prostitution Offense (Sex Trafficking)**

(1)      The parties agree that the underlying unlawful activity is sex trafficking of a minor in violation of 18 U.S.C. § 1591 and that the base offense level is 30 under U.S.S.G. §§ 2G1.3(a)(2) and 2X1.1;

(2)      The parties agree that pursuant to U.S.S.G. § 2G1.3(b)(3)(B), there is a two (2) level increase because the offense involved the use of a computer and interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor;

(3)      The parties agree that pursuant to U.S.S.G. § 2G1.3(b)(4), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact.

Thus, the adjusted offense level for Count One is **34.**

## COUNT TWO

**b.      Use of Interstate Facilities in Aid of Business Enterprise Involving Prostitution Offense (Sex Trafficking)**

(1)      The parties agree that the underlying unlawful activity is sex trafficking of a minor in violation of 18 U.S.C. § 1591 and that the base offense level is 30 under U.S.S.G. §§ 2G1.3(a)(2) and 2X1.1;

(2)      The parties agree that pursuant to U.S.S.G. § 2G1.3(b)(3)(B), there is a two (2) level increase because the offense involved the use of a computer and interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor;

(3)      The parties agree that pursuant to U.S.S.G. § 2G1.3(b)(4), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact.

Thus, the adjusted offense level for Count Two is **34.**

c.      Pursuant to U.S.S.G. § 3D1.2, Counts Two and Three do not group. As the offense level for Count Two is equally serious as the offense level for Count Three, such that two (2) additional levels are added for a total of **36.**

### d.    ACCEPTANCE

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty if applicable. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

Accordingly, the final adjusted offense level is **33**.

### Obligations of the United States Attorney's Office

7.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

8.      The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

### Rule 11(c)(1)(C) Plea

9.      The parties have stipulated and agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), **to a total sentence of six (6) years** in the custody of the Bureau of Prisons as an appropriate disposition of this case, consisting of three years imprisonment on Count One and three years imprisonment on Count Two, to run consecutively to Count One. For the purposes of this agreement, imprisonment is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose restitution or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, she will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to

6

acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the Defendant would not be able to withdraw his plea.

## Waiver of Appeal

10.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. §1291 or otherwise, to appeal the Defendant's conviction.

b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11.    The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any

alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C) as described in paragraph 10 of this agreement.

## Court Not a Party

11.     The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, nor her counsel, nor the Court, can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

12.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____

Ayn B. Ducao
Assistant United States Attorney

8

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

10-09-17
_____
Date

*[signature]* +V 12-15-17
_____
Tomasa Vegas

I am Tomasa Vegas's attorney.  I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her.  She advises me that she understands and accepts its terms.  To my knowledge, her decision to enter into this agree is an informed and voluntary one.

10/9/17
_____
Date

*[signature]* CL 12/15/17
_____
Christian Bryan Lassiter, Esquire

9

## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Tomasa Vegas (the Defendant), age 20, is a resident of Glen Burnie, Maryland.

On June 8, 2016, special agents from Homeland Security Investigations (HSI) responded to Anne Arundel County, Maryland, Child Protective Services (CPS) for a report of a possible human trafficking victim that they had located. CPS indicated that VICTIM 1, a 15 year old female, had been reported as a missing person since May 4, 2016. According to CPS, while VICTIM 1 was missing, she was texting her aunt and VICTIM 1's aunt disclosed that VICTIM 1 confided that the Defendant had helped VICTIM 1 to set up prostitution advertisements posted on the Internet website Backpage.com and the Defendant had transported VICTIM 1 for prostitution purposes. VICTIM 1's grandmother and legal guardian stated that while VICTIM 1 was missing, VICTIM 1's grandmother had friends sending her photos from the Instagram page of VICTIM 1 showing VICTIM 1 in hotel rooms wearing underwear and Instagram photos of VICTIM 1 and the Defendant together.

According to VICTIM 1, the Defendant approached VICTIM 1 about putting up Backpage ads of VICTIM 1 and doing a "two-girl special", or a date with two prostitutes and one client. VICTIM 1 also got Percocets from the Defendant. VICTIM 1 reported her true age to the Defendant. VICTIM 1 said that there was an occasion where the Defendant texted VICTIM 1 via Instagram about making money. An electronic device such as a cell phone or computer is needed to send texts through Instagram.

i

Backpage records show numerous Internet prostitution ads with photos of VICTIM 1 which had been posted from May 22, 2016 through June 5, 2016 in Baltimore, Annapolis, and Glen Burnie, Maryland. Many of the photos displayed VICTIM 1 wearing little clothing and posing provocatively in hotel rooms. The Backpage records indicated that for some of these ads, the phone number used by the Defendant's mother was put in the ads. The Defendant's contact with VICTIM 1 spanned from in or about March 2016, continuing through in or about November 2016.

Fourteen-year-old VICTIM 2 met the Defendant through the Defendant's brother. VICTIM 2 ran away from home in approximately July 2016 and started staying at the Defendant's house. VICTIM 2 told the Defendant VICTIM 2's true age. The Defendant asked VICTIM 2 to do a prostitution date and VICTIM 2 agreed. The Defendant took a photo of VICTIM 2 for a prostitution advertisement posted on the Internet website Backpage.com. A prostitution date was arranged for VICTIM 2 by the Defendant. Prior to sex with VICTIM 2, the customer gave money to the Defendant and VICTIM 2 heard the Defendant tell the customer that VICTIM 2 was younger and newer to the whole thing and to be careful with her. VICTIM 2 ended up having vaginal intercourse with a condom with the customer. The Defendant's contact with VICTIM 1 spanned from in or about February 2016, continuing through in or about November 2016.

Cellular phones and the Internet are facilities used in interstate commerce.

2

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

_____  4V 12-15-77

Tomasa Vegas
Defendant

       I am Tomasa Vegas's attorney.  I have carefully reviewed the statement of facts with her.

_____  CL
Christian Bryan Lassiter, Esquire    12/15/17

3